**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR DISCOVERY IN AID OF FOREIGN PROCEEDINGS** | Misc. Action No. _____ |

**APPLICANT REPUBLIC OF KAZAKHSTAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
***EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................. 3

ARGUMENT ................................................................................................................................... 4

    I.    THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS ................................................................................................. 4

        A.    Section 1782 and Discovery In Aid of Foreign Proceedings ...................... 4

        B.    Section 1782's Three Statutory Requirements ........................................... 5

        C.    The Application Meets Section 1782's Three Statutory Requirements ...... 5

    II.    THE APPLICATION SATISFIES THE FOUR DISCRETIONARY INTEL FACTORS ........................................................................................................... 7

        A.    The Clearing Banks Are Not Parties to the Enforcement Proceedings ...... 8

        B.    The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought ......................................................................................................... 8

        C.    The Application Does Not Seek to Circumvent Proof-Gathering Restrictions in the Enforcement Court ....................................................... 10

        D.    The Subpoenas Are Not Unduly Intrusive or Burdensome ...................... 11

    III.    THE APPLICATION WAS PROPERLY BROUGHT EX PARTE .................... 12

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1782 to Conduct Discovery v. Bullock*,
    652 Fed. Appx. 7 (2d Cir. 2016) ........................................................................................... 7

*In re App. of Rep. of Ecuador*,
    2011 U.S. Dist. LEXIS 103360 ..................................................................................... 11, 12

*In re Application of Guy*,
    No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) .................................................. 9

*In re Ex Parte Application of IPCom GMBH & Co. KG*,
    No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746 (N.D. Cal. April 10, 2014) ...... 6

*In re Ex Parte Application of Rigby*,
    2013 U.S. Dist. LEXIS 23251 ............................................................................................. 7

*In re Application of Strand Invs. Ltd.*,
    No. 09-cv-21985, 2009 U.S. Dist. LEXIS 76445 (S.D. Fl. July 24, 2009) .............................. 6

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*,
    696 F. App'x. 537 (2d Cir. 2017) ........................................................................................ 8

*Bouvier v. Adelson* (*In re Accent Delight Int'l Ltd.*),
    869 F.3d 121 (2d Cir. 2017) ....................................................................................... 2, 4, 5

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ................................................................................................. 4

*In re Cohen*,
    No. 16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622 (E.D.N.Y. Dec. 6, 2016) .............. 6

*In re Gianoli Aldunate*,
    3 F.3d 54 (2d Cir. 1993) ..................................................................................................... 5

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ....................................................................................... 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................................................. *passim*

*Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ............................................................................................ 5, 7

*In re Iraq Telecom Ltd.*,
   No. 18-MC-458 (LGS) (OTW), 2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019) ........................5

*In re Kreke Immobilien KG*,
   No. 13 Misc. 110 (NRB), 2013 U.S. Dist. LEXIS 160283 (S.D.N.Y. Nov. 8, 2013) .......5, 6, 7

*In re Letters Rogatory from Tokyo Dist.*,
   539 F.2d 1216 (9th Cir. 1976) ..................................................................................................12

*In re Malev Hungarian Airlines*,
   964 F.2d 97 (2d Cir. 1992)..........................................................................................................2

*Marubeni Am. Corp. v. LBA Y.K.*,
   335 Fed. Appx. 95 (2d Cir. 2009)................................................................................................7

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)........................................................................................................7

*O'Keefe v. Adelson (In re O'Keeffe)*,
   650 F. App'x. 83 (2d Cir. 2016) ................................................................................................12

*In re Ontario Principals' Counsel*,
   No. 2:13-mc-120-LKK-KJN, 2013 U.S. Dist. LEXIS 179955 (E.D. Cal. Dec. 23, 2013)..........6

*In re Piraeus Bank*,
   No. 20-mc-210 (RA), 2020 WL 2521322 (S.D.N.Y. May 18, 2020).........................................5

*Symeou v. Hornbeam Corp.* (*In re Hornbeam Corp.*),
   No. 17-658-cv, 2018 U.S. App. LEXIS 985 (2d Cir. Jan. 16, 2018)...............................5, 6, 12

*Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*,
   864 F.3d 172 (2d Cir. 2017).......................................................................................................9

*In re Vale S.A.*,
   No. 20-mc-199 (JGK) (OTW), 2020 WL 4048669 (S.D.N.Y. July 20, 2020)..........................9

**Statutes**

28 U.S.C. § 1782.............................................................................................................. *passim*

**Other Authorities**

http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html..................................................................................................................................9

https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part31 .....................................9, 10

**INTRODUCTION**

Applicant Republic of Kazakhstan ("**Kazakhstan**") submits this Memorandum of Law In Support of its *Ex Parte* Application Pursuant to 28 U.S.C. § 1782 ("**Application**") for an Order permitting Kazakhstan to serve subpoenas *duces tecum* ("**Subpoenas**") upon: (a) The Bank of New York Mellon Corporation; (b) JPMorgan Chase Bank, N.A.; (c) Deutsche Bank Trust Co. Americas; (d) Bank of China; (e) Barclays Bank PLC; (f) BNP Paribas USA; (g) Citibank N.A.; (h) The Clearing House Payments Company LLC (CHIPS); (i) Commerzbank AG; (j) HSBC Bank USA, N.A.; (k) Société Générale S.A.; (l) Standard Chartered Bank US; (m) UBS AG; (n) Wells Fargo Bank, N.A.; and (o) Bank of America, N.A. (collectively, "**Clearing Banks**").  A sample draft of the proposed Subpoenas is attached to the accompanying Application as Exhibit A.[1]

**PRELIMINARY STATEMENT**

This Application is a limited-purpose action brought pursuant to Title 28 U.S.C. § 1782 ("**Section 1782**") to obtain evidence from the Clearing Banks that Kazakhstan will use in foreign judicial proceedings it intends to bring in England ("**Enforcement Proceedings**") well as future judicial legal proceedings that may be brought in other foreign jurisdictions ("**Prospective Enforcement Proceedings**") to enforce and collect upon an arbitral award that was issued in Kazakhstan's favor in an investor-state arbitration PCA Case No. 2016-23 ("**Arbitral Award**") that a Canadian company called Gold Pool JV Limited ("**Gold Pool**") commenced against Kazakhstan in March of 2016 ("**Arbitration**").

The Clearing Banks played no role in the underlying Arbitration, do not owe any money under the Arbitral Award, and are not alleged to have engaged in any wrongdoing in connection with this matter.  The Clearing Banks nevertheless collectively process all U.S. dollar-denominated

---

[1]   Each of the Subpoenas is substantively identical to each other.

1

transactions that were originated outside of the United States, and therefore possess information about Gold Pool's financial transactions that Kazakhstan requires to identify the location of Gold Pool assets, as well as assets to which Gold Pool has access in order to satisfy the Arbitral Award.

Kazakhstan requires that information from the Clearing Banks because Gold Pool is a special purpose vehicle that engages in no revenue-generating activities and has not indicated that it will voluntarily comply with the Arbitral Award, which ordered Gold Pool to pay Kazakhstan approximately $_____, plus interest, to compensate Kazakhstan for the significant legal costs that Kazakhstan incurred to defend against the jurisdictionally deficient claims that Gold Pool asserted in the Arbitration.

As the accompanying Application explains, although Gold Pool received some third-party funding, it also generated legal costs of $_____ to pursue its failed claims, which strongly indicates that Gold Pool either has, or has access to, assets about which Kazakhstan is not currently aware. Kazakhstan is therefore compelled to judicially enforce the Arbitral Award and use the information obtained from the Subpoenas to do so.

Consequently, this Application falls squarely within Section 1782's stated goal of "provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004), and serves Section 1782's aim of "'providing [an] efficient means of assistance to participants in international litigation in our federal courts. . . .'" *Bouvier v. Adelson* (*In re Accent Delight Int'l Ltd.*), 869 F.3d 121, 134 (2d Cir. 2017) (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

The Application should therefore be granted, and Kazakhstan should be permitted to issue the Subpoenas to the Clearing Banks.

**BACKGROUND**

This Application arises out of Gold Pool's failure to satisfy the Arbitral Award that Kazakhstan obtained against Gold Pool in July of this year for approximately $, plus interest. *See* Declaration of Matthew E. Draper, Esq. dated October 30, 2020 ("**Draper Declaration**"), ¶¶. As the accompanying Application and Draper Declaration explain, Kazakhstan obtained the Arbitral Award after an arbitral tribunal comprised of three highly regarded public international law experts ("**Arbitral Tribunal**") dismissed Gold Pool's claims against Kazakhstan on jurisdictional grounds and awarded Kazakhstan the substantial costs that Kazakhstan incurred to defend against Gold Pool's jurisdictionally deficient claims. *See id.*, ¶¶.

After obtaining that Arbitral Award against Gold Pool, Kazakhstan demanded that Gold Pool satisfy it by August 28, 2020. Gold Pool not only failed to pay any sums required under the Arbitral Award by that date, but did not even acknowledge the demand. Gold Pool has, thus, clearly indicated that it will not voluntarily comply with the Arbitral Award, further confirming that Kazakhstan must judicially enforce the Arbitral Award and then attach Gold Pool's assets or assets to which Gold Pool has access to collect.

As the accompanying Application explains in detail in Paragraphs 30 through 34, Kazakhstan does not anticipate that it will be difficult to judicially enforce the Arbitral Award. Kazakhstan does, however, expect that collecting money from Gold Pool will be challenging, because Gold Pool is a special purpose entity that exists solely to pursue the Arbitration that Gold Pool has now lost. Accordingly, Gold Pool has no revenue-generating business activity from which Kazakhstan could hope to benefit.

As Paragraphs 35 through 42 of the Application further describe, however, Gold Pool received dollars from a third-party funder, while also generating legal costs of $ in its failed Arbitration bid, strongly suggesting Gold Pool either possesses assets

3

about which Kazakhstan is not aware, or has access to such assets. Gold Pool is believed to have previously transacted in U.S. Dollars – and, specifically, in relation to the Arbitration, including receiving funding in U.S. Dollars and incurring legal costs in U.S. Dollars – and the Subpoenas to the Clearing Banks should help unearth those assets and assist Kazakhstan in expeditiously concluding the Enforcement Proceedings and subsequent collection efforts.

## ARGUMENT

Section I below demonstrates that the Application meets Section 1782's three statutory requirements. Section II confirms that the Application also satisfies the four discretionary factors the Supreme Court announced in *Intel Corp. v. Advanced Micro Devices, Inc.* ("**Intel** Factors"). Lastly, Section III verifies that courts routinely grant Section 1782 applications *ex parte*.

**I.     THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS**

   **A.     Section 1782 and Discovery In Aid of Foreign Proceedings**

Section 1782 authorizes courts to order parties found within their jurisdiction to provide documentary and testimonial evidence in support of foreign proceedings. *See* 28 U.S.C. § 1782 (2012); *see also Intel Corp.*, 542 U.S. at 247 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").

Section 1782(a) specifically provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . ." 28 U.S.C. § 1782(a). District courts have broad discretion to grant leave to seek discovery from a person found in its district. *See In re Accent Delight Int'l Ltd.*, 869 F.3d at 134 ("The availability of Section 1782 discovery is . . . quite broad and only has broadened through successive amendments over the years."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)

4

(relating that Section 1782 has been given "'increasingly broad applicability'" in recent years) (quoting *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993)).

### B. Section 1782's Three Statutory Requirements

Section 1782 imposes three statutory requirements parties must satisfy to obtain an order permitting discovery. Those three requirements are: (1) "'the person from whom discovery is sought [must] reside[] (or . . . [be] found)' within the court's district;" (2) "'the discovery . . . [must be] for use in a foreign proceeding before a foreign tribunal;'" and (3) "'the application . . . [must be] made by a[n] . . . interested person.'" *Symeou v. Hornbeam Corp.* (*In re Hornbeam Corp.*), No. 17-658-cv, 2018 U.S. App. LEXIS 985, at *2 (2d Cir. Jan. 16, 2018) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *see In re Accent Delight Int'l Ltd.*, 869 F.3d at 128 (relating same); *Certain Funds, Accounts and/or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (explaining the same).

### C. The Application Meets Section 1782's Three Statutory Requirements

The Application easily satisfies Section 1782's three statutory requirements.

First, each of the Clearing Banks from whom discovery is sought maintains a physical presence within this District and transacts significant business here. *See In re Piraeus Bank*, No. 20-mc-210 (RA), 2020 WL 2521322, at *2 (S.D.N.Y. May 18, 2020) (granting section 1782 discovery from, inter alia, Citibank, HSBC, Bank of New York Mellon, and JP Morgan Chase Bank, and finding such corporations "are New York entit[ies] and/or [have their] principal place of business in New York, New York"); *In re Iraq Telecom Ltd.*, No. 18-MC-458 (LGS) (OTW), 2019 WL 3798059, at *3 (S.D.N.Y. Aug. 13, 2019) (finding Citibank, Wells Fargo, and Bank of New York Mellon "conduct business in this District"); *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 U.S. Dist. LEXIS 160283, at *9 (S.D.N.Y. Nov. 8, 2013) (holding that Deutsche

5

Bank is found in this District because it "is an entity operating a business within the Southern District of New York, where this application has been filed"). Therefore, within the meaning of Section 1782, the Clearing Banks are found here and the first statutory requirement is satisfied.

Second, the discovery sought through the Subpoenas will be used in proceedings before a foreign tribunal because it will be used in support of the Enforcement Proceedings in the English High Court, and could also be used in other jurisdictions in the Prospective Enforcement Proceedings. United States courts routinely conclude that foreign judicial proceedings satisfy Section 1782's "foreign tribunal" requirement. *See In re Kreke Immobilien KG*, 2013 U.S. Dist. LEXIS 160283, at *7-9 (concluding that German judicial proceedings are foreign proceedings within the meaning of Section 1782); *see also In re Cohen*, No. 16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622, at *11 (E.D.N.Y. Dec. 6, 2016) (finding that the English High Court is a foreign tribunal within the meaning of Section 1782); *In re Ex Parte Application of IPCom GMBH & Co. KG*, No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746, at *5 (N.D. Cal. April 10, 2014) (holding that German court proceedings qualify as foreign proceedings for Section 1782's purposes); *In re Ontario Principals' Counsel*, No. 2:13-mc-120-LKK-KJN, 2013 U.S. Dist. LEXIS 179955, at *8 (E.D. Cal. Dec. 23, 2013) (noting that the "court has little difficulty in concluding that contemplated civil litigation in Canada qualifies as a proceeding in a foreign tribunal . . . . "); *In re Application of Strand Invs. Ltd.*, No. 09- 21985-CIV-MORENO, 2009 U.S. Dist. LEXIS 76445, at *3 (S.D. Fl. July 24, 2009) (presuming that court proceedings in the Bahamas satisfied Section 1782's "foreign tribunal" requirement); *In re Hornbeam Corp.*, 2018 U.S. App. LEXIS 985, at 9-10 (foreign proceeding was reasonably contemplated for purposes of Section 1782 where the petitioner "represented that it intended to initiate further litigation once it obtained additional information" and "articulated a theory on which it intended to litigate").

Third, Kazakhstan will be the plaintiff in the Enforcement Proceedings, which makes it an "interested person" for Section 1782's purposes. *See In re Kreke Immobilien KG*, 2013 U.S. Dist. LEXIS 160283, at *9 (concluding that the applicant was an interested person because it was a party to the foreign proceedings); *In re Ex Parte Application of Rigby*, 2013 U.S. Dist. LEXIS 23251, at *2 (holding that applicant "is an 'interested party' as he is a party to the [foreign] litigation").

Accordingly, the Application meets all three of Section 1782's statutory requirements. As the following section shows, the Application also satisfies the four discretionary *Intel* factors and should therefore be granted.

## II. THE APPLICATION SATISFIES THE FOUR DISCRETIONARY *INTEL* FACTORS

After determining that a party satisfies Section 1782's three statutory requirements, courts consider the four discretionary *Intel* Factors enunciated by the Supreme Court. *See Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery v. Bullock*, 652 Fed. Appx. 7, 8 (2d Cir. 2016) (explaining that courts should examine the discretionary *Intel* Factors after determining that Section 1782's three statutory requirements have been met); *Certain Funds, Accounts, and And/Or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C.*, 798 F.3d at 117 (relating the same).

In exercising its discretion under Section 1782, a district court should consider the "twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015); *see Certain Funds, Accounts, and And/Or Inv. Vehicles*, 798 F.3d at 117 (relating same); *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 96 (2d Cir. 2009) (explaining same).

The four *Intel* Factors are:

7

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for [Section] 1782(a) aid generally is not as apparent;"
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court or agency abroad to U.S. federal-court judicial assistance;"
>
> (3) whether the Section 1782 application "conceals an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States;" and
>
> (4) whether the request is "unduly intrusive or burdensome."

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 696 F. App'x. 537, 539-40 (2d Cir. 2017) (quoting *Mees v. Butler*, 793 F.3d 291, 298 (2d Cir. 2015); and citing *Intel Corp.*, 542 U.S. at 264-65). In this case, all four *Intel* Factors favor granting the Application.

### A. The Clearing Banks Are Not Parties to the Enforcement Proceedings

The first *Intel* factor clearly favors granting the Application because the Clearing Banks are not parties to the Enforcement Proceedings. As the Supreme Court explained in *Intel*:

> When the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel Corp.*, 542 U.S. at 264.

In this case, the Clearing Banks are not parties to any of the Enforcement Proceedings and would not be made parties in any scenario that Kazakhstan currently envisions. Consequently, the first *Intel* factor favors granting the Application.

### B. The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought

The second *Intel* factor examines the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to the requested discovery. This factor favors granting the Application as well.

8

The English High Court is a common law court that generally permits discovery,[2] and there is nothing to indicate that the High Court would refuse to accept relevant and material evidence that would help conclude proceedings it was adjudicating. *See In re Vale S.A.,* No. 20-mc-199 (JGK) (OTW), 2020 WL 4048669, at *4 (S.D.N.Y. July 20, 2020) (granting 1782 discovery and finding "the High Court [of Justice, Business and Property Courts of England and Wales, Commercial Court] would be receptive to this Court's assistance and there is no evidence to the contrary" and "the Application is not an attempt to circumvent limitations on disclosure or discovery in the English proceeding"); *In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2, 4 (S.D.N.Y. Aug. 19, 2004) (granting 1782 discovery and finding "the English Action is pending in the High Court of Justice, Chancery Division, a trial court which . . . hears the testimony of witnesses and receives documents in evidence, very much as American courts do").

Moreover, the United Kingdom is a signatory to the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 ("**New York Convention**"), with the treaty having come into force in the United Kingdom on December 23, 1975.[3]

The New York Convention, in relevant part, obligates the courts of signatory states to enforce foreign arbitral awards as national judgments of the enforcing court. *See Thai-Lao*

---

2   *See* English Civil Practice Rules, Part 31, *available at:* https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part31

3   *See* United Nations Commission on International Trade Law, New York Convention Status, *available at* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html (setting forth the dates on which the New York Convention came into force in its various signatory states).

*Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 178 (2d Cir. 2017) (instructing that the New York Convention governs the enforcement of foreign arbitral awards and requires enforcement courts to treat awards as binding judgments of the enforcing court).[4]

As signatories to the New York Convention, the English Court will be obligated to expeditiously conclude the Enforcement Proceedings, and the evidence sought through the Subpoenas will assist the English Court in that regard. Moreover, as a signatory to the New York Convention, the English Court has an interest in ensuring that the Arbitral Award is not only recognized, but satisfied, and the evidence sought by the Subpoenas will also assist in achieving that outcome.

Consequently, there is every reason to believe the English Court will be receptive to the evidence obtained by the Subpoenas. The second *Intel* factor therefore favors the Application as well.

### C. The Application Does Not Seek to Circumvent Proof-Gathering Restrictions in the Enforcement Court

The third *Intel* factor also favors the Application, because the Subpoenas do not seek to circumvent any proof-gathering restrictions in the English Court.

As is noted above, English Courts permit the collection and introduction of relevant documentary evidence in civil proceedings and generally allow discovery. *See* English Civil Practice Rules, Part 31, *available at:* https://www.justice.gov.uk/courts/procedure-

---

[4] As a technical matter, the Arbitral Award will be enforced in England in the first instance under the Arbitration Act, 1996, because the Arbitration was seated in London. That does not change the fact, however, that this is ultimately an international award that will be globally subject to the New York Convention.

rules/civil/rules/part31 (setting forth disclosure requirements in English civil litigation, including standard disclosure obligations and an obligation to search for certain documents).

Moreover, Section 1782 does not impose any foreign discoverability requirement in any event, and Section 1782 applications can therefore be granted even when the evidence sought could not be obtained under the procedures of the foreign court to which the evidence will be presented. *See Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery*, 652 F. App'x. at 9 (relating that "[t]here is no 'requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding'" (quoting *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997)). Accordingly, even if there was some rule in English courts against the collection of relevant evidence – and there is not – that rule would not weigh against granting this Application. *See id.*

Accordingly, the third discretionary *Intel* factor favors the Application as well.

### D. The Subpoenas Are Not Unduly Intrusive or Burdensome

Lastly, the Fourth *Intel* factor also favors granting the Application because the Subpoenas are narrowly tailored to obtain documents from the Clearing Banks that are sufficient to identify any U.S.-Dollar denominated financial transactions (and particularly wire transfers) that the Clearing Banks may have processed concerning Gold Pool, as well as any Gold Pool property they might be holding themselves. The Subpoenas therefore seek evidence that is directly relevant to Kazakhstan's enforcement efforts and endeavor to obtain that evidence in a minimally intrusive fashion. *See In re Application of Republic of Ecuador*, No. 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360, at *8 (E.D. Cal. Sept. 13, 2011) (stating that "given the relevance of the information, it is arguably less likely that issuance of the subpoena will result in undue intrusion or burden. . . .").

Consequently, all four discretionary *Intel* factors favor granting the Application, and Kazakhstan should be permitted to serve the Subpoenas on the Clearing Banks.

### III. THE APPLICATION WAS PROPERLY BROUGHT *EX PARTE*

Finally, the Application was properly brought *ex parte*, because "'it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.'" *In re Hornbeam Corp.*, 2018 U.S. App. LEXIS 985, at *5 (quoting *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)); *see O'Keefe v. Adelson (In re O'Keeffe)*, 650 F. App'x. 83, 85 (2d Cir. 2016) (granting *ex parte* 1782 application and noting such applications are commonplace and proper).

Courts grant Section 1782 applications *ex parte* because the respondent "can later challenge any discovery request by moving to quash." *Gushlak*, 486 F. App'x at 217; *see In re App. of Rep. of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4-5 (explaining that "*ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it"); *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (noting that *ex parte* Section 1782 requests are proper because the recipient can raise objections and move to quash after service).

Accordingly, courts routinely grant Section 1782 applications *ex parte*, and this Court should similarly do so.

## **CONCLUSION**

For the reasons set forth above, Kazakhstan respectfully requests that the Court grant its Application *ex parte* and permit Kazakhstan to serve the Subpoenas on the Clearing Banks.

Dated: November 5, 2020

Respectfully submitted,

**DRAPER & DRAPER, LLC**

_____
Matthew E. Draper, Esq.
New York Bar No. 4368502
*Attorneys for The Republic of Kazakhstan*

200 Park Avenue
Suite 1700
New York, New York 10166
Phone: 347-442-7788
E-mail: matthew.draper@draperllc.com

13